KENYATTA JOHNSON, Individually        )
  and as a 2008 Democratic Party )
  Primary Candidate for State   )   Civil Action
  Representative and Elector    )   No. 08-cv-01748
  and on Behalf of All Citizens )
  Within the 186th Legislative  )
  District and All Citizens     )
  of Philadelphia, and          )
DAMON K. ROBERTS, Individually  )
  and as a 2007 Democratic Party )
  Candidate for a Philadelphia  )
  City Council and Elector and  )
  on Behalf of All Citizens     )
  Within the Second Councilmanic )
  District and all Citizens of  )
  Philadelphia,                 )
                                )
              Plaintiffs        )
                                )
         vs.                    )
                                )
CITY AND COUNTY OF              )
  PHILADELPHIA,                 )
                                )
              Defendant         )

                    *    *    *


APPEARANCES:

        LAWRENCE M. OTTER, ESQUIRE
             On behalf of Plaintiffs

        NICOLE S. MORRIS, ESQUIRE
        CRAIG M. STRAW, ESQUIRE
             On behalf of Defendant


                    *    *    *

O P I N I O N

JAMES KNOLL GARDNER,
United States District Judge

This matter is before the court on Defendant's Second Motion for Summary Judgment filed October 20, 2009. Plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgment was filed November 11, 2009. For the following reasons, I grant defendant's motion and enter judgment in favor of defendant and against plaintiffs.

JURISDICTION

Jurisdiction in this case is based upon federal question jurisdiction pursuant to 28 U.S.C. § 1331.

VENUE

Venue is proper pursuant to 28 U.S.C. § 1391(b) because the events giving rise to plaintiff's claims allegedly occurred in Philadelphia, Pennsylvania, which is within this judicial district.

PROCEDURAL HISTORY

Plaintiff Kenyatta Johnson initiated this action on April 13, 2008 by filing a four-count civil Complaint, together with a motion for preliminary injunction, against the City and County of Philadelphia and the City of Philadelphia Department of Licenses and Inspections. The Complaint alleged that Philadelphia city and county ordinances violate the First and

Fourteenth Amendments to the United States Constitution by imposing fines, fees and/or taxes for placing political signs on poles within the 186th Legislative District, where plaintiff Johnson was running for office. Specifically, plaintiff Johnson challenged city ordinances §§ 10-1202 and 10-1203. Defendant answered on April 18, 2008.

The case was originally assigned to my colleague, former United States District Judge Marvin Katz, and was reassigned to former United States District Judge Bruce W. Kauffman on April 14, 2008. That same day, Judge Kauffman referred the motion for preliminary injunction to Magistrate Judge L. Felipe Restrepo, who denied the motion by memorandum and order dated April 16, 2008. On April 18, 2008, Magistrate Judge Restrepo denied plaintiff's motion for reconsideration.

On July 1, 2008, plaintiff Johnson moved to file an amended complaint to add Damon K. Roberts as a plaintiff. Judge Kauffman granted the motion on July 15, 2010.[1] Defendant answered the four-count First Amended Complaint on August 4, 2008.

_____

[1] According to the docket, plaintiff Johnson's motion to amend appears at Document 18. However, a review of that document indicates that it is simply plaintiff's proposed Amended Complaint. Moreover, although Judge Kauffman's July 15, 2008 Order granting the motion to amend directed the Clerk of Court to docket the proposed Amended Complaint, it appears that the original Complaint, not the Amended Complaint, was re-docketed as Document 20. Because the Amended Complaint appears at Document 18 filed July 1, 2008, I refer to the Amended Complaint as having been filed that day.

Count One of the First Amended Complaint alleges that "Defendants' enforcement of a total ban on political speech in the form of campaign posters hung on a pole within the public right of way is a violation of Plaintiff's and all citizens' First Amendment rights to free political speech especially prior to an election."  (First Amended Complaint, paragraph 26.)

Similarly, Count Two alleges that "The total ban on political speech in the form of political signs posted on trees and poles within the public right of way in the 186th Legislative District, Second Councilmanic District and throughout the City and County of Philadelphia unconstitutionally interferes with Plaintiff's campaign for public office and the rights of all citizens to express a political opinion within the public right of way in front of their homes or businesses."  (First Amended Complaint, paragraph 28.)

Count Three alleges that "defendants' enforcement of Philadelphia Code § 10-1201 et seq and the punitive threat of imposition of fines and costs impermissibly interferes with Plaintiff's campaign in violation of the Twenty Fourth Amendment in that it imposes an unconstitutional tax on elections of federal and state officials."  (First Amended Complaint, paragraph 31.)

Count Four alleges that the City of Philadelphia ("City") favors commercial speech by providing an exception for special banners, which according to plaintiffs have not been used for political campaigning. Plaintiffs allege that defendant's exception for non-political speech through the "banner program" denies plaintiff Johnson specifically, and political candidates generally, equal protection of the law in violation of the Fourteenth Amendment. (First Amended Complaint, paragraphs 35-37.)

By Order dated September 24, 2008, Judge Kauffman granted defendants' unopposed motion to close an earlier case, Civil Action No. 07-cv-4582 (the "2007 case"), wherein plaintiff Roberts challenged the same ordinances which are at issue in this matter. Because plaintiff Roberts had been added as a plaintiff in the Amended Complaint in this action, Judge Kauffman consolidated the 2007 case into the case at bar, and closed the 2007 case.

On November 18, 2008, defendant the City and County of Philadelphia filed a motion for summary judgment, which plaintiffs opposed by memorandum filed December 3, 2008. On August 10, 2009, the case was reassigned from Judge Kauffman to me. Because the parties' pending briefs did not comport with my formal written Policies and Procedures, I dismissed the motion by

Order dated September 22, 2009 without prejudice for defendant to refile its motion in accordance with my requirements.

By stipulation of dismissal filed September 24, 2009, plaintiffs voluntarily dismissed defendant City of Philadelphia Department of Licenses and Inspections as a party to this action pursuant to Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure.

Defendant's Second Motion for Summary Judgment was filed October 20, 2009. Plaintiffs' Memorandum in Opposition to Defendant's Motion for Summary Judgment was filed November 11, 2009. On January 13, 2010, I heard oral argument and took the matter under advisement. Hence this Opinion.

<u>STANDARD OF REVIEW</u>

In considering a motion for summary judgment, the court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). <u>See also</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-2510, 91 L.Ed.2d 202, 211 (1986); <u>Federal Home Loan Mortgage Corporation v. Scottsdale Insurance Company</u>, 316 F.3d 431, 443 (3d Cir. 2003). Only facts that may affect the outcome of a case are "material". In making this determination, the "evidence of

the non-movant is to be believed" and all reasonable inferences from the record are drawn in favor of the non-movant.  Anderson, 477 U.S. at 255, 106 S.Ct. at 2513, 91 L.Ed.2d at 216.

Although the movant has the initial burden of demonstrating the absence of genuine issues of material fact, the non-movant must then establish the existence of each element on which it bears the burden of proof.  See Watson v. Eastman Kodak Company, 235 F.3d 851, 857-858 (3d Cir. 2000).  Plaintiffs cannot avert summary judgment with speculation or by resting on the allegations in their pleadings, but rather they must present competent evidence from which a jury could reasonably find in their favor.  Ridgewood Board of Education v. N.E. for M.E., 172 F.3d 238, 252 (3d Cir. 1999); Woods v. Bentsen, 889 F.Supp. 179, 184 (E.D.Pa. 1995).

<u>FACTS</u>

Based upon the pleadings, record papers, exhibits, the concise statement of undisputed facts filed by defendant, and the Plaintiffs' Response to Defendant's Statement of Undisputed Facts,[2] the pertinent undisputed facts for purposes the motion

---

[2]     My September 22, 2009 Order required that "any party filing a motion for summary judgment...shall file and serve, in addition to a brief, a separate short concise statement, in numbered paragraphs, of the material facts about which the moving party contends there is no genuine dispute.  The moving party shall support each material fact with specific citations to the record, and, where practicable, attach copies of the relevant portions of the record."

(Footnote 2 continued):

for summary judgment are as follows.

Chapter 10-1200 of the Philadelphia Code concerns the posting of signs.  This Bill was enacted in response to this court's decision in <u>Bella Vista United, et al. v. City of Philadelphia</u>, 2004 U.S.Dist.LEXIS 6771 (E.D.Pa. April 15, 2004) (Padova, J.), which enjoined the City from enforcing certain sections of the Philadelphia Code.  The former Code provisions instilled in undesignated City officials the discretion to determine which temporary signs may be posted on public fixtures by requiring individuals to obtain a permit, submit a deposit, and pay a fee before posting any temporary signs.  <u>See</u> <u>Bella Vista</u>, <u>supra</u>.

---

(<u>Continuation of footnote 2</u>):

     Defendant's motion for summary judgment complies with that provision of my Order.  Plaintiffs' response partially comports with my Order, which further required that "any party opposing a motion for summary judgment...shall file and serve, in addition to a brief, a separate short concise statement, responding in numbered paragraphs to the moving party's statement of the material facts about which the opposing party contends there is a genuine dispute, with specific citations to the record, and, where practicable, attach copies of the relevant portions of the record.  All factual assertions set forth in the moving party's statement shall be deemed admitted unless specifically denied by the opposing party in the manner set forth in this paragraph."

     Plaintiffs' Response to Defendant's Statement of Undisputed Facts states that plaintiffs agree with most of the undisputed facts set forth by defendant, but does not agree that defendant's statements numbered 3, 5, and 12-13 are undisputed.  Therefore, I deem admitted the rest of defendant's proffered facts.  Additionally, I note that Plaintiff's Response to Defendant's Statement of Undisputed Facts does not contain citations to the record supporting their allegation that there are genuine issues of material fact.

The purpose of the current ordinance is to promote public safety and to reduce blight in the City.[3]  Section 10-1202 prohibits the posting of any sign on any utility pole; streetlight; traffic or parking sign or device, including any post to which such sign or device is attached; historical marker; or City-owned tree or tree in the public right-of-way.  The reasons for prohibiting signs on trees and posts are public safety and aesthetics.  However, a person may post a sign on a streetlight if the sign complies with the requirements of the Banner Program.

_____

[3]     Plaintiffs' Response to Defendant's Statement of Undisputed Facts avers that the reasons for the ordinance are disputed (specifically, defendant contends that the purposes are to promote public safety, reduce blight, and preserve aesthetics).  Plaintiffs cite Rappa v. New Castle County, 18 F.3d 1043, 1070 (3d Cir. 1994) in support of their contention that "the safety and aesthetics argument 'fails'."  (Plaintiffs' Response to Defendant's Statement of Undisputed Facts at 3, 5.)  However, plaintiffs offer no citation to the record establishing a genuine issue of material fact regarding the purpose of the ordinance.

Although plaintiffs suggest that Rappa stands for the proposition that safety and aesthetics are insufficient reasons for the ordinance, Rappa is distinguishable in that the challenged ordinance barred the plaintiff-candidate's signs but permitted other types of signs.  Rappa, 18 F.3d at 1047.  The Court concluded that the defendants' safety and aesthetics justification "fail[ed]", in part, because defendants had offered "no proof to support their claim that campaign signs present greater aesthetic and safety problems than other types of signs."  Rappa, 18 F.3d at 1070.

Here, as noted below, it is undisputed that § 10-1202 prohibits the posting of "any sign" on any utility pole, streetlight, traffic or parking sign or device, historical marker, or City-owned tree or tree in the public right-of-way.  Moreover, it is undisputed that the City issued violation notices to political candidates as well as carpet cleaning companies, weight-loss programs, apartment rental organizations, nightclubs, plumbers, childcare agencies, and others for violating § 10-1202.  Plaintiffs have adduced no evidence challenging any of these facts.  Accordingly, I consider it undisputed that the purpose of the ordinance is to promote public safety and reduce blight in the City.

-9-

Section 10-1203 provides that any posted sign that does not comply with § 10-1202 may be removed by the Department of Licenses and Inspections or its designees, and any person responsible for posting the sign shall be fined for the cost incurred in removing the signs and a penalty of $75.00.

Between January 23, 2006 and October 30, 2007, the City's Department of Licenses and Inspections issued numerous violation notices and tickets to political candidates and commercial entities, such as carpet cleaning companies, weight-loss programs, apartment-rental organizations, nightclubs, plumbers, childcare agencies and others, for violating § 10-1202. The City issued a total of the following amount of tickets to political candidates running for office in May 2007: Bob Brady (287), Dwight Evans (168), Sandra Miller (25), Sandra Mills (31), Chaka Fattah (24), Michael Nutter (31), Wayne Johns (27), John Greene (41), Bob Mulgrew (11), Tom Knox (4), Damon Roberts (76), Helen A. Divers (1), Curtis McAllister (10), Carol Campbell (1), Matt McClure (52), Bernie Stain (3), and Bill Greenlee (1).

Voters in Philadelphia are centrally located. Candidates in the City rely on door-to-door canvassing and literature-dropping, posting signs on private property, and phone calls.

In 2008, plaintiff Johnson ran for the position of State Representative for District 186.  He ordered 5,000 posters

to be used in his 2008 campaign.  These posters were placed on poles in the right-of-way and in windows of campaign supporters' homes and businesses.

On March 26, 2008, the City issued a letter to plaintiff Johnson advising that, pursuant to § 10-1202, he must remove any signs placed on any utility pole, streetlight, traffic or parking device, historical marker, City-owned tree or tree in the public right-of-way.  The letter further advised plaintiff Johnson that failure to remove would result in confiscation and a removal penalty of $75.00.  Plaintiff Johnson was featured in a local South Philadelphia newspaper in which he had an opportunity to discuss his position on issues facing voters, at no cost to his campaign.

Plaintiff Johnson has not asserted that he applied to participate in the City's Banner Program.  He was successful in his April 22, 2008 bid for election.

On May 15, 2007, plaintiff Roberts ran for a seat on Philadelphia District Council.  The City issued Code Violation Notices to plaintiff Roberts, similar to those issued to plaintiff Johnson.  The City also issued violation notices to political candidates, carpet cleaning companies, weight-loss programs, apartment-rental organizations, nightclubs, plumbers, childcare agencies and others, for violating § 10-1202.

Plaintiff Roberts was unsuccessful in his bid for the Second
District seat.

Defendant's Contentions

Defendant contends that it is entitled to summary
judgment on plaintiffs' First Amendment claims because the
ordinance is narrowly tailored to serve a significant
governmental interest and plaintiffs have ample alternative
channels for communication of their political message.  Defendant
contends that this is the appropriate test because plaintiff
Johnson concedes that the challenged ordinance is content-
neutral.

Specifically, defendant contends that the ordinance is
narrowly tailored to further the City's interests in safety and
aesthetics.  Defendant avers that the ordinance does not prohibit
the posting of signs on private property (e.g., in a window), but
rather is designed to promote safety and aesthetics by
prohibiting signs on streetlights and utility poles.

Moreover, defendant contends that the ordinance
provides ample alternatives to posting signs because in
Philadelphia, there are many inexpensive ways to communicate with
voters because voters are centrally located.  For example, an
urban setting allows for face-to-face interaction, that is,
candidates and their volunteers can meet with voters at their

homes, deliver literature by mail or in-person and can call
voters.  Moreover, candidates can advertise on television, in the
newspaper, and on the internet.

Additionally, defendant contends that plaintiffs cannot
show that the City selectively enforces the ordinance against
non-endorsed Democratic candidates in violation of the Fourteenth
Amendment.  Specifically, defendant avers that plaintiff has
failed to establish any evidence that he was the subject of
"purposeful discrimination" by the City.

Finally, defendant avers that plaintiffs have adduced
no evidence to support their claim that enforcement of the
ordinance, and the fines imposed for violations thereof, impose
an unconstitutional tax on the election of federal and state
officials in violation of the Twenty-Fourth Amendment.
Accordingly, defendant seeks summary judgment in its favor on all
of plaintiffs' claims.

Plaintiffs' Contentions

Plaintiffs contend there is a fact question regarding
"whether there are ample means of alternative communication given
the low campaign budgets of Plaintiffs".  According to
plaintiffs, this is a material fact because means of political
communication are not entirely fungible.  Specifically,
plaintiffs contend that political signs are a cheap and effective
way of getting out a candidate's message and name recognition,

can be localized, and are convenient.  Plaintiffs aver that
other, more expensive forms of campaign advertising were beyond
plaintiffs' means in 2007 and 2008.

Plaintiffs further contend that the ordinance "violates
the spirit of the Twenty Fourth Amendment" because plaintiff
Johnson's posters are "so called coat tail items which advocated
his election along with now President Barack Obama".

Plaintiffs concede that the ordinance does not ban only
political speech, but rather "bans everything from city streets
including campaign signs".  (Plaintiffs' brief, page 2.)

## DISCUSSION

Plaintiffs challenge Philadelphia Ordinances
§§ 10-1201 to 1203.  Specifically, those ordinances provide:

> § 10-1201.  Definitions.
>
>> "Signs" include, but are not limited to,
>> banners, pennants, placards, posters,
>> stickers, advertising flags, and plaques.
>
> § 10-1202.  Prohibited Conduct.
>
>> (a)  Except as provided in subsection (b), no
>> person shall post any sign on any:
>>
>>> (1)  utility pole;
>>>
>>> (2)  streetlight;
>>>
>>> (3)  traffic or parking sign or device,
>>> including any post to which such
>>> sign or device is attached;
>>>
>>> (4)  historical marker; or

(5) City-owned tree or tree in the
    public right-of-way.

(b) A person may post a sign on a
    streetlight provided the sign complies
    with the requirements of the Banner
    Program, as defined by regulations
    promulgated by the Department of
    Streets.

§ 10-1203. Posting of Prohibited Signs.

(a) Any posted sign that does not comply
    with the provisions of § 10-1202 may be
    removed by the Department of Licenses &
    Inspections or its designees.

(b) Any person responsible for the posting
    of a sign not in compliance with the
    provisions of § 10-1202 shall be liable:

    (1) for the cost incurred in the
        removal thereof; and

    (2) for a penalty of $75.

Philadelphia Ordinances §§ 10-1201 to 1203.

<u>Counts One and Two</u>

Counts One and Two allege claims for violation of the
First Amendment. "[W]hen state action affects political speech
it trenches upon an area in which the importance of First
Amendment protections is 'at its zenith.'" <u>Rappa v. New Castle
County</u>, 18 F.3d 1043, 1049 (3d Cir. 1994).

The first step in First Amendment analysis is to
determine whether a statute is content-neutral or content-based.
<u>Rappa</u>, 18 F.3d at 1053. The principal inquiry in time, place or
manner cases is whether the government has "adopted a regulation

-15-

of speech because of disagreement with the message it conveys."
Startzell v. City of Philadelphia, 533 F.3d 138, 197 (3d Cir.
2008).

"A regulation is deemed content neutral if it serves
purposes unrelated to the content of speech, regardless of
whether it incidentally affects certain speakers or messages and
not others.  Id.  Thus, government regulation of speech is
content neutral if it is "justified without reference to the
content of the regulated speech."  Id. (quoting Ward v. Rock
Against Racism, 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d
661, 675 (1989)).

Here, it is undisputed that the purposes of the
ordinance in question are to promote public safety and reduce
blight in the City, both of which are unrelated to the content of
the affected speech.  Moreover, plaintiffs concede that the
ordinance "bans everything from city streets including campaign
signs." (Plaintiffs' brief, page 2.)  Accordingly, I consider
the ordinance content-neutral.

Where a regulation is content-neutral, the government
may impose reasonable restrictions on the time, place, or manner
of protected speech, provided (1) the restrictions are "justified
without reference to the content of the regulated speech, (2)
that they are narrowly tailored to serve a significant
governmental interest, and (3) that they leave open ample

alternative channels for communication of the information."
Ward v. Rock Against Racism, 491 U.S. 781, 791, 109 S.Ct. 2746,
2753, 105 L.Ed.2d 661 (1989).

As noted above, the first Ward factor is satisfied in
this case because the City's restriction on sign placement is
justified without reference to the content of the regulated
speech.  Specifically, it is undisputed that § 10-1202 bans the
posting of all signs, regardless of content, on utility poles,
streetlights, traffic or parking signs, historical markers, and
City-owned trees or trees in the public right-of-way.

Regarding the second Ward factor, defendant contends
the regulation is narrowly tailored to serve a significant
government interest because it is designed to further the City's
interests in safety and aesthetics, and does not prohibit the
posting of signs on private property.

A state may legitimately exercise its police powers to
advance aesthetic values.  Members of City Council of City of Los
Angeles v. Taxpayers for Vincent, 466 U.S. 789, 805, 104 S.Ct.
2118, 2129, 80 L.Ed.2d 772, 787 (1984).  In Vincent, the Supreme
Court noted that an accumulation of signs posted on public
property "constitutes a significant substantive evil within the
City's power to prohibit", and that the city's interest in
preserving the quality of urban life is "one that must be
accorded high respect".  Id. (quoting Young v. American Mini

Theatres, Inc., 427 U.S. 50, 71, 96 S.Ct. 2440, 2453,
49 L.Ed.2d 310, 327 (1976).

Moreover, the court defers to the legislative judgment
that goals of traffic safety and community aesthetics are
advanced by an ordinance, unless it is facially unreasonable.
Frumer v. Cheltenham Township, 709 F.2d 874, 877 (3d Cir.
1983)(citing Metromedia, Inc. v. San Diego, 453 U.S. 490,
507-508, 101 S.Ct. 2882, 2892-2893, 69 L.Ed.2d 800, 815 (1981)).

Although regulation of the time, place or manner of
protected speech must be narrowly tailored to serve the
government's legitimate, content-neutral interests, "it need not
be the least restrictive or least intrusive means of doing so."
Ward, 491 U.S. at 798, 109 S.Ct. at 2757-2758, 105 L.Ed.2d at
680. Rather, a regulation is narrowly tailored so long as it
"promotes a substantial government interest that would be
achieved less effectively absent the regulation." Ward,
491 U.S. at 799, 109 S.Ct. at 2758, 105 L.Ed.2d at 680.

Here, the ordinance at issue only prohibits the posting
of signs on public property or in the public right-of-way.  It
does not affect plaintiffs' ability to display campaign signs on
private property.  See Rappa, 18 F.3d at 1077 n.59, which notes a
"special interest in posting signs on private property which
should be taken into account in a time, place, and manner
analysis."  Because the ordinance is facially reasonable, I defer

to the City's legislative determination that the ordinance advances the City's interests in aesthetics and safety.

Accordingly, I conclude that defendants have satisfied the second Ward factor because the ordinance is narrowly tailored to serve a significant government interest which would be achieved less effectively absent the regulation. See Vincent, supra.

Regarding the third Ward factor, defendant contends that the challenged ordinance leaves open "ample alternative channels" for communication of political messages. Plaintiffs aver that there is a genuine issue of material fact regarding this factor because, they contend, means of political communication are not entirely fungible. That is, plaintiffs assert that political signs are cheap, effective, and convenient, and that there are not ample alternative channels which are affordable. They aver that other methods of campaigning and campaign advertising are expensive and beyond plaintiffs' means, and that methods such as going door-to-door are time-consuming.

In support of this contention, plaintiffs rely on the opinion of their expert, Joe Long, chairman of the Northampton County Democratic Committee, who opines that campaigning methods other than signs are expensive and that "[t]here is absolutely no reasonable or viable alternative for an individual to make his

political views known to his neighbor than the venerable political poster in his or her front yard."  (Plaintiffs' memorandum, Exhibit C.)

Although the Court of Appeals for the Third Circuit has suggested that the expense of alternative methods is relevant, see Rappa, 18 F.3d at 1077, here it is undisputed that voters in Philadelphia are centrally located, and that candidates in the City rely on door-to-door canvassing and literature-dropping, posting signs on private property, and phone calls.  Moreover, the ordinance permits posting of political signs on public property, which according plaintiffs' expert, Mr. Long, is the most effective method "for an individual to make his political views known to his neighbor".  See also Rappa, 18 F.3d at 1077, which notes that "[p]osting a sign on one's own property may not only be easier and less expensive than alternative means of communication, but may be a unique means of self-expression for the property owner" because it indicates that the property owner supports a particular candidate.

Although "[a]n alternative is not ample if the speaker is not permitted to reach the 'intended audience,'"[4] here it is undisputed that candidates in Philadelphia rely on door-to-door canvassing and literature-dropping, posting signs on private property, and phone calls, all of which are permissible under

_____

[4]      Startzell, 533 F.3d at 202.

-20-

§ 10-1202.  Thus, I conclude that the challenged ordinance leaves
open ample alternatives to the posting of signs on public
property.

Plaintiffs contend that although yard and window signs
are permitted on private property, this does not constitute an
"ample alternative" because an urban setting such as Philadelphia
lacks traditional front yards.  Although I am not unsympathetic
to the reality that forms of communication other than the posting
of signs may be expensive, I note that "[a]n adequate alternative
does not have to be the speaker's first or best choice."
Gresham v. Peterson, 225 F.3d 899, 906 (7th Cir. 2000).[5]  This
comports with the United States Supreme Court's view that "the
First Amendment does not guarantee the right to communicate one's
views at all times and places or in any manner that may be
desired."  Heffron v. International Society for Krishna
Consciousness, Inc., 452 U.S. 640, 647, 101 S.Ct. 2559, 2564,
69 L.Ed.2d 298, 306 (1981).

Thus, I conclude that all three Ward factors have been
satisfied, and therefore § 10-1201 to § 10-1203 is a permissible

---

[5]     See also CAMP Legal Defense Fund, Inc. v. City of Atlanta,
451 F.3d 1257, 1282 (11th Cir. 2006)("The Constitution requires only that [the
city] leave open an alternative channel of communication, not the alternative
channel of communication [plaintiff] desires.")(emphasis in original);
Mastrovincenzo v. City of New York, 435 F.3d 78, 101 (2d Cir. 2006)("The
requirement that 'ample alternative channels' exist does not imply that
alternative channels must be perfect substitutes for those channels denied to
plaintiffs by the regulation at hand; indeed, were we to interpret the
requirement in this way, no alternative channels could ever be deemed
'ample.'").

"time, place or manner" restriction on the posting of signs on public property. Accordingly, I grant summary judgment in favor of defendants on plaintiffs' First Amendment claims set forth in Counts One and Two, and I enter judgment in favor of defendant and against plaintiffs on those claims.

Count Three

Count Three alleges that "defendants' enforcement of § 10-1201 et seq and the punitive threat of imposition of fines and costs impermissibly interferes with Plaintiff's campaign in violation of the Twenty Fourth Amendment in that it imposes an unconstitutional tax on elections of federal and state officials." (First Amended Complaint, paragraph 32.) Additionally, Count Three alleges that the ordinance outlaws the fee requirement for state elections pursuant to the Fourteenth Amendment.

Defendant contends that plaintiffs have adduced no evidence to support this claim, and that plaintiffs have not established that the Twenty-fourth Amendment applies in this case. Plaintiffs respond that pre-election citations issued to plaintiffs "violate[] the spirit of the Twenty Fourth Amendment", and remark that plaintiff Johnson's posters are "so called coat tail items which advocated his election along with now President Barrack Obama." (Plaintiffs' brief, page 12.)

Plaintiffs aver that the fact that Mr. Obama was
running for a federal office "clearly implicates the 24th
Amendment" and that the punitive aspect of the challenged
ordinance "run[s] afoul of the Twenty Fourth Amendment for
federal offices and the Supreme Court ruling in Harper v.
Virginia, 383 U.S. 663 (1966), [which] outlaws the fee
requirement for state elections."  Id.

The Twenty-fourth Amendment provides:

> The rights of the citizens of the United States to
> vote in any primary or other election for
> President or Vice President, for electors for
> President or Vice President, or for Senator or
> Representative in Congress, shall not be denied or
> abridged by the United States or any State by
> reason of failure to pay any poll tax or other
> law.

U.S. Const. amend. XXIV.

Although plaintiffs suggest that the facts of this case
implicate the Twenty-fourth Amendment because plaintiff Johnson
used posters advocating the election of Barack Obama for
President of the United States, they offer no legal authority for
this proposition.  Moreover, they allege no facts from which a
jury could conclude that any citizen's right to vote was denied
or abridged by the United States government as a result of the
challenged ordinance.

Plaintiffs rely on Harper v. Virginia State Board of
Elections for the proposition that "a State violates the Equal
Protection Clause of the Fourteenth Amendment whenever it makes

the affluence of the voter or payment of any fee an electoral standard." 383 U.S. 663, 666, 86 S.Ct. 1079, 1081, 16 L.Ed.2d 169, 172 (1966). Again, however, they have proffered no facts from which a jury could conclude that a state or local government made the affluence of the <u>voter</u> an electoral standard, or required voters to pay any fee in exchange for the right to vote. Moreover, they offer no legal authority in support of their argument that the challenged ordinance, and the City's enforcement of it, is actionable for "violat[ing] the spirit of" the Twenty-fourth Amendment.

As noted above, plaintiffs cannot avert summary judgment with speculation or by resting on the allegations in their pleadings. Rather, they must present competent evidence from which a jury could reasonably find in their favor. <u>Ridgewood Board of Education</u>, 172 F.3d at 252; <u>Woods v. Bentsen</u>, 889 F.Supp. at 184. Because plaintiffs have adduced no evidence to establish that there is a genuine issue of material fact regarding the claims set forth in Count Three, I grant summary judgment in defendant's favor on that count.

<u>Count Four</u>

Count Four avers that "The City favors commercial speech to the detriment of non[-]commercial political speech as evidenced by the exception for special banners that may be placed on poles throughout the city. Philadelphia Code § 10-1202(b).

These banners tend to advertise commercial events, educational institutions, festivals, special events, charitable events, circuses, etc." (First Amended Complaint, paragraph 35.)

Count Four further asserts that plaintiffs are not aware that any political candidates ever used the so-called "Banner Program" as a form of campaigning for political office, and alleges that defendants' exception for non-commercial and political speech to be posted on street poles through the Banner Program denies plaintiff Johnson equal protection of the law in violation of the Fourteenth Amendment. (First Amended Complaint, paragraphs 36-37.)

Additionally, although not specifically set forth in Count Four, the First Amended Complaint alleges that the City, through its Department of Licenses and Inspections, "selectively enforced the ordinance against non[-]endorsed Democratic candidates including Plaintiffs in violation of the Fourteenth Amendment". (First Amended Complaint, paragraph 16.) It further avers that "The selective and punitive nature of the fine bears no rational relationship to the perceived goals of the sign ordinance." (First Amended Complaint, paragraph 17.)

The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To

establish a prima facie case of discrimination under the Equal

Protection Clause, a plaintiff must demonstrate that he is a

member of a protected class and that he was treated differently

than similarly situated individuals.  Keenan v. City of

Philadelphia, 983 F.2d 459, 465 (3d Cir. 1992).

Alternatively, a plaintiff can pursue an equal

protection claim on a "class of one" theory.  In order to state a

state an equal protection claim as a "class of one", a plaintiff

must, at a minimum, allege that (1) defendant treated him

differently from others similarly situated, (2) the defendant did

so intentionally, and (3) there was no rational basis for the

difference in treatment.  Hill v. Borough of Kutztown, 455 F.3d

225, 239. (3d Cir. 2006).

Defendant contends that plaintiffs have established no

evidence that they were the subject of purposeful discrimination

by the City, or that they were treated in a racially

discriminatory manner.  Plaintiffs' brief in opposition to

defendants' motion states that "the City's 'Banner' program

raises Fourteenth Amendment equal protection problems since there

appears to be a clear favoritism for civic boosters over

political campaigns." (Plaintiffs' brief, page 9.)

Additionally, plaintiffs aver that

> [T]he ordinance discriminates against political
> non[-]commercial speech in favor of commercial
> speech of business, artisans, service clubs and
> show bills touting the arrival of the circus,

> traveling medicine shows, tent revival meetings
> and the gay and lesbian festival by allowing
> banners to be posted on street light poles.
> Obviously there is unequal treatment under color
> of state law within the defendant municipality.
> Such preference of commercial speech to
> ideological or partisan speech has uniformly been
> held to an inversion of First Amendment
> values....Philadelphia's ordinance favor[s]
> commercial speech over non-commercial political
> speech and this clearly violates the equal
> protection mandates of the Fourteenth Amendment.

(Plaintiffs' brief, page 6.)

To the extent plaintiffs' allegations regarding the
Banner Program more properly sound in First Amendment law, I
grant summary judgment in favor of defendants on any such claim
for reasons articulated above in my discussion of Counts One and
Two.  Moreover, plaintiffs have not established that they are
members of a protected class and, as such, were treated
differently than similarly situated persons, nor have they
adduced evidence to support a "class of one" claim.  See Hill,
455 F.3d at 239.

It is undisputed that pursuant to § 10-1202(b), a
person may post a sign on a streetlight if the sign complies with
the requirements of the Banner Program.  Plaintiffs have not
alleged that they applied for a permit under the Banner Program,
nor that their signs complied with the requirements of the Banner
Program.  Moreover, they have adduced no evidence from which a
jury could conclude that the City selectively enforced § 10-1202.
Aside from their bald assertion that there "appears to be a clear

-27-

favoritism for civic boosters over political campaigns",
plaintiffs cite nothing in the record from which a jury could
conclude that the City's Banner Program favored non-political
speech.

To the extent plaintiffs may be pursuing a "class of
one" equal protection claim, they have not established that they
were treated differently from similarly situated individuals.  On
the contrary, the undisputed facts are that the City sent
violation notices to numerous political candidates, in addition
to numerous types of commercial organizations.  Even drawing all
reasonable inferences from the record in favor of plaintiff as
the non-moving party, I conclude that plaintiffs have adduced no
evidence which creates a genuine issue of material fact on their
equal protection claims.  Anderson, 477 U.S. at 255,
106 S.Ct. at 2513, 91 L.Ed.2d at 216.  Accordingly, I grant
summary judgment in favor of defendant on Count Four.

CONCLUSION

For all the foregoing reasons, I grant Defendant's
Second Motion for Summary Judgment and enter judgment in favor of
defendant and against plaintiffs on all counts set forth in the
First Amended Complaint.